[Civ. No. 6182. First Appellate District, Division One.—March 10, 1928.]

MINNIE KENDIS, Respondent, v. A. B. COHN et al., Appellants.

42

Newby & Palmer and Dee Holder for Appellants.

Lissner, Roth & Gunter for Respondent.

CAMPBELL, J., *pro tem.*—Appellants on or about July 12, 1918, were the owners in fee of certain real property situated in the city of Los Angeles, consisting of an apartment house of 122 rooms and the land upon which the apartment house stood. On that date appellants leased the premises to W. A. Barker and C. H. Barker for a period of 15 years at a monthly rental of $975. The lessees, W. A. Barker and C. H. Barker, however, never took possession, but immediately and as a part of the same transaction the appellants and the original lessees entered into an agreement by which it was provided that the said lessees could execute a sublease to respondent Minnie Kendis for a term not exceeding the term provided in the original lease, conditioned that the terms and obligations of the original lease were fully kept and performed.

Subsequent to this agreement, but on the same day this agreement was entered into and the original lease was executed, the original lessees and respondent entered into an agreement styled "Sub-Lease," whereby the lessees demised to respondent all of the premises described in the original lease for the term provided in such lease, and upon the same terms, conditions and covenants as contained therein. In this sublease respondent "agreed to pay the rent and to fully keep and perform all of the terms and conditions of the original lease on the part of said lessees to be kept and performed in the same manner and at the times in said lease set forth."

On the day of the execution of the above instruments the original lessees agreed with respondent that respondent might at any time thereafter assign her interest in the premises without obtaining the consent ot the lessees in the original lease or any other person. There is, however, no finding that appellants had any notice of this agreement. Thereafter respondent entered into possession of the premises and ever since has been in the lawful possession thereof.

On May 17, 1922, W. A. Barker, one of the original lessees died, and the other lessee, Charles Lawrence Barker, was duly appointed executor of his estate. He and the heirs and distributees of the estate executed and delivered to appellants for a valuable consideration a written surrender of all their right, title, and interest in and to the demised premises. This surrender was made and accepted without the knowledge or consent of respondent.

On March 27, 1924, respondent obtained a prospective purchaser, one Arthur L. Roberts, for her interest in the premises and of all the furniture for the sum of $110,000. This prospective purchaser was found by the court to be a fit, suitable, proper, and responsible person of good character and repute. The court further found that Roberts was presented to appellants by respondent, who informed them of the proposed sale to Roberts, and asked that they recognize and accept him as the assignee of respondent's interest in the demised premises and that they give their consent to such assignment, but that appellants, in order to prevent the respondent from effecting a sale of the lease and respondent's furniture without additional benefits to themselves in the form of increased rental and a surrender of the original lease and sublease, arbitrarily and unreasonably and in contravention of the rights of respondent in the premises, refused to accept Roberts as the assignee of respondent or to give their consent to an assignment to him or to in any way investigate his qualifications in respect to his character or his reputation for honesty. Upon the refusal of appellants to recognize Roberts as a qualified assignee of respondent and give their consent to the assignment to him, he withdrew his offer to purchase said premises and furniture and did not proceed further with the proposed purchase.

On April 2, 1924, respondent filed an action against appellants, the complaint containing three counts; the first for a judgment declaratory of the rights of the parties relative to the assignment of the lease; the second for damages for arbitrarily refusing to consent to an assignment of the lease by respondent to her purchaser, and the third for damages for slander of title. The court found and entered judgment that respondent was not entitled to any relief sounding in damages, but was entitled to relief declaring her rights in regard to the lease. The court declared these rights to be as follows:

"That the appellants by their consent to the assignment to respondent of said lease forever waived and discharged the provision in said lease, permitting the appellants at their option to terminate the lease if there was any assignment of said lease, whether voluntary or involuntary, or by operation of law, or otherwise, without the written consent of the appellants, but the covenant of the lessee not to assign without the written consent of the lessor remains binding on the respondent as a covenant, but without any condition of forfeiture for breach thereof. That the right on the part of the appellants or any of them or their successors in interest to terminate said lease, or to declare a forfeiture of respondent's rights thereunder, or to obtain possession of the premises, on account of breach of said covenants, by any legal process or in any other manner, was lost. That all other provisions and covenants of said lease remained and still remain in full force and effect. That appellants, their administrators, executors, successors and assigns have by said appellants' acts and conduct forever relinquished and lost the right to declare or enforce a forfeiture or termination of said lease. That in the event the respondent assigns said interest without the consent of the defendants or their successors in interest, said assignment shall nevertheless be valid, and the appellants, by reason thereof, shall not have the right or power to re-enter into possession or retake or obtain possession of said premises. That by reason of said surrender to appellants paragraph three of the agreement between the lessees and the appellants is no longer of any effect. That the appellants in said lease did not positively consent to the assignment of said lease in any case. That in the event the respondent applies for the consent of the

defendants to any proposed assignment, and the said appellants arbitrarily or unreasonably fail, neglect or refuse to examine into or determine the qualifications of the proposed assignee fairly and in good faith with reasonable diligence, the respondent may make and has in such event the legal right to make an assignment without express permission to the person proposed, provided he is a responsible person of good character and repute; and no liability for any damages for breach of any covenant against assignment without the consent of said appellants will be incurred by reason of such assignment. That the respondent has the right to conduct the apartment house business on the premises.''

Appellants have appealed from all that portion of the judgment which defines and determines respondent's rights in regard to the original lease, and respondent has appealed from certain portions of the judgment defining the rights of the parties in the instruments in question and from the judgment that she take nothing by way of damages from appellants, this latter appeal by respondent herein being number 6183 and entitled ''Minnie Kendis, Plaintiff and Appellant, v. A. B. Cohn, Lulu B. Cohn, M. B. Cohn and Hattie B. Cohn, Defendants and Respondents,'' and is submitted by stipulation on the same transcript and briefs filed herein, both appeals being taken on the judgment-roll alone. The appeals raise the general question: what are the rights of the parties in regard to the lease when it is construed with the agreements or instruments executed with it, and when construed in the light of the circumstances surrounding it?

The vital portions of the lease to be considered or construed, and which is designated exhibit ''A,'' are:

''Said lessees further covenant and agree to pay said lessors the said rent at the time and in the manner herein reserved, and shall not assign, pledge, hypothecate, or otherwise dispose of this lease nor any portion of the term of this lease, and shall not sublet the premises nor any portion thereof, without the written consent of the said lessors first had and obtained; and any assignment of this lease, whether voluntary or involuntary or by operation of law or otherwise, without such written consent of said lessors, shall, at

the option of said lessors, terminate the lease, and the lessees hereby waive notice of the exercise of such option.

"Said lessees may, with the written consent of the said lessors, assign said lease to any person or persons of good character and repute and satisfactory to the lessors, upon furnishing good and sufficient security to be approved by said lessors.

"No failure or omission on the part of the lessors to insist upon or to enforce any of the terms, agreements, covenants or conditions of this lease for one or more breaches or infractions in the past, whether by the lessees or their sub-lessees or tenants, shall be deemed a waiver of such terms and agreements, covenants, or conditions, but such right of enforcement shall continue for any and all breaches or infractions, when such waiver shall be by an agreement in writing, and shall expressly refer to all future breaches or infractions.

"Said lessees hereby covenant and agree that their sub-lessees, tenants, successors and assigns shall be bound by and shall fully and strictly comply with each and all of the terms, covenants, agreements and conditions of this lease, except that such sub-lessees, tenants or assigns shall pay their rent to said lessees.

"It is expressly agreed that each and all of the terms, covenants, agreements and conditions of this lease are material, essential and substantial, and without which the said lessors would not have executed the same.

"This lease and all its covenants, agreements and conditions shall bind said lessors, their heirs, executors, administrators and assigns, and shall bind said lessees, their heirs, executors, administrators and successors, and also their assigns, in case of an assignment of said lease by and with the written consent of the lessors."

The vital portions of the instruments necessary to an understanding of the questions here presented, executed at the same time as the lease and with the lease constituting a part of the contract between the parties (Civil Code, sec. 1642; *Beedy* v. *San Mateo Hotel Co.*, 27 Cal. App. 653 [150 Pac. 810]; *McAuliffe* v. *McFadden*, 42 Cal. App. 505, 511 [183 Pac. 870]; *Bailey* v. *Security Trust Co.*, 179 Cal. 540 [177 Pac. 444]; *Merkeley* v. *Fisk*, 179 Cal. 748 [178 Pac. 945]), are as follows:

Exhibit "B"—Memorandum of agreement entered into this 12th day of July, 1918, between A. B. Cohn and Lulu B. Cohn, his wife, and M. B. Cohn and Hattie B. Cohn, his wife, parties of the first part, and W. A. Barker and C. H. Barker, parties of the second part—"Said parties of the first part (appellants) have agreed to accept Mrs. A. P. Kendis (respondent) as the subtenant and the sub-lessee of said second parties during the term of said new lease so executed, and it is understood that the said Mrs. A. P. Kendis shall pay all rents under said sub-leasing and sub-tenancy to second parties, and shall be the sub-lessee of said second parties under said new lease and for a term not exceeding 15 years—provided the terms and obligations of said new lease entered into between the parties hereto are fully kept and performed as provided therein—and that in the event the said Mrs. A. P. Kendis (respondent) shall not fully comply with all of the terms and conditions thereof on the part of the lessees to be kept and performed, or shall fail to pay the rent or observe the other obligations thereof, then and in that event the said second parties herein may, at their option, terminate such subtenancy and place in charge of said premises as their sub-tenants or otherwise some other suitable and proper person satisfactory to said first parties."

Exhibit "C"—made this 12th day of July, 1918, by and between W. A. Barker and C. H. Barker, parties of the first part, and Mrs. A. P. Kendis, party of the second part— "That the said original lessees in said indenture of lease hereinbefore referred to have sublet to said Mrs. A. P. Kendis (respondent) and said A. P. Kendis (respondent) does hereby hire from said original lessees the said apartment house property upon all of the terms, covenants, conditions and agreements in said original lease set forth, and does hereby agree to pay rent and to fully keep and perform all of the terms and conditions of said lease on the part of said lessees to be kept and performed, in the manner and at the times in said lease set forth, a copy of which said lease is hereto attached and made a part hereof as fully as if the provisions thereof were herein set forth in full."

On the same day and following the execution of exhibit "C," the Barkers, the lessees in the original lease exhibit "A," executed a written agreement with respondent by the

terms of which they agreed that respondent "might, at any time hereafter, assign her interest in the aforesaid property acquired by and through said exhibit "C" without obtaining the consent of said W. A. Barker and/or C. H. Barker, or any other person."

The trial court in construing these instruments determined that respondent was an assignee of the Barkers and not a subtenant, and the original lessors having consented to an assignment of the lease by the original lessees to respondent, they waived the condition in the lease against assignment, and respondent was therefore permitted to assign the lease to a purchaser from her.

The question as to the effect to be given a consent by a lessor to an assignment by his lessee on the right to make subsequent assignments first arose in England in 1578, in the Dumpor's case, 4 Code 119, [76 Eng. Reprint, 1110]. In that case the president and scholars of the College of Corpus Christi, in Oxford, made a lease for years of land to one Bolde, with a proviso that the lessee or his assigns should not alien the premises to any person or persons without the special license of the lessors. Afterward the lessors by their deed licensed the lessee to demise the land or any part of it to any person or persons *quibuscunque*. Two years later the lessee assigned the lease to one Tubbe, who by his last will devised it to his son. The son entered and afterward died intestate and during the ordinary course of administration the lease was assigned to the defendant. The president and scholars entered for condition broken, to wit: Assignment without their consent, and made a lease to plaintiff for twenty-one years who entered upon defendant, who re-entered, upon which re-entry an action of trespass was brought.

Upon these facts it was held by the court that a condition in a lease that the lessee or his assigns should not alien without the special license of the lessors was determined by an alienation by license, so that no subsequent alienation was a breach of the condition, the reason given for this decision being "that the alienation by license to Tubbe had determined the condition, so that no alienation which he might afterward make could break the proviso, or give cause of entry to the lessors, for the lessors could not dispense with an alienation for one time, and that same estate

should remain subject to the proviso after. And although the proviso be that the lessee or his assigns shall not alien, yet when the lessors license the lessee to alien, they shall never defeat by force of the said proviso the term which is absolutely aliened by their license, inasmuch as the assignee has the same term which was assigned by their assent; so if the lessors dispense with one alienation, they thereby dispense with all alienations after; for inasmuch as by force of the lessor's license, and of the lessee's assignment, the estate and interest of Tubbe were absolute, it is not possible that his assignee, who has his estate and interest, shall be subject to the first condition and as the dispensation of one alienation is the dispensation of all others, so it is as to the persons, for if the lessor dispense with one, all the others are at liberty.''

The holding of Dumpor's case may in brief be resolved into the formula doubly stated: That *a condition* against assignment without the license of the lessor *is entire and cannot be apportioned* by the act of the parties; and that a license given and an assignment made pursuant thereto destroys the whole condition, leaving the assignee or any subsequent assignee at full liberty to assign the lease to whomever they please.

The Dumpor's case doctrine has been criticised by both English and American jurists. It was approved in *Whitchcake* v. *Fox*, 80 Eng. Rep. 1129, decided about in 1614. From that time until 1807 it finds no support in English judicial decisions. In 1807 it was approved in *Brummel* v. *McPherson,* 14 Ves. Jr. 173—Lord Eldon, however, remarking: ''Though Dumpor's case always struck me as extraordinary, it is the law of the land today. When a man demises to A, his executors, administrators or assigns, with an agreement that if he, his executors, administrators or assigns, assign without license, the lessor shall be at liberty to re-enter, it would have been perfectly reasonably originally to say, a license granted was not a dispensation with the condition; the assignee being by the very terms of the original contract restrained as much as the original lessee.'' In *Does* v. *Bliss,* 4 Taunt. 735, Sir. James Mansfield said: ''The profession has always wondered at Dumpor's case, but it has been law so many centuries that we cannot now reverse it.''

The American profession has received the rule of Dumpor's case with no greater enthusiasm than their English brethren. In 1 Washburn, Real Property, 379, the author says: "Dumpor's case has always been, it is believed, a stumbling block in the way of the profession." In *Moss* v. *Chappell*, 126 Ga. 196, 207 [11 L. R. A. (N. S.) 398, 54 S. E. 968, 973], the supreme court of Georgia says: "The doctrine of that case (Dumpor's case) that a condition is not divisible seems to us to be purely artificial and not founded upon any sound reason." In *North Chicago Street R. Co.* v. *Le Grand Co.*, 95 Ill. App. 435, the court uses this language: "A decision regarded by the English bench and bar so unreasonable as to warrant resort to legislation to eliminate it from the body of the English law will hardly be followed in this state." In *Investors' Guaranty Corp.* v. *Thomson*, 31 Wyo. 264 [37. A. L. R. 1071, 225 Pac. 590], decided by the supreme court of Wyoming, the court refused to follow the rule declared in Dumpor's case. The court there said that in view of the fact that there were, as yet, no decisions in that state following Dumpor's case, and as the English statutes had changed the rule, Wyoming was not required to and did not follow the rule as originally declared. Referring to the California case af *German American Savings Bank* v. *Gollmer*, 155 Cal. 683, 688 [24 L. R. A. (N. S.) 1066, 102 Pac. 932], the court says: "In *German Am. Sav. Bank* v. *Gollmer*, *supra*, it was said that a condition against assignment is in all cases necessarily single in its nature. But why is it? Three centuries of legal lore have never answered that question, though frequently asked, for the simple reason that no answer, to stand the test of logic and reason, can be given."

Appellants urge that the Dumpor's case has never been accepted as good law and many adverse criticisms of its doctrine have been made by both English and American jurists, and that the rule it announces is not at the present time followed in this state.

It has long been settled that restraints upon the use or alienation of granted premises may within certain limits be lawfully imposed, which is a reasonable recognition of the owner's right to deal with property as he pleases, provided the restraints are not unlawful or against public policy (*Broadway Bank* v. *Adams*, 133 Mass. 170 [43 Am.

Rep. 504]; *Nichols* v. *Eaton*, 91 U. S. 716 [23 L. Ed. 254, see, also, Rose's U. S. Notes]). Consequently, covenants against assignment of a lease without the written consent of the lessor are regarded as fair and reasonable. The lessor may place any restriction within these limits on the right of the lessee to select his tenant for him (*E. H. Powers Shoe Co.* v. *Odd Fellows Hall Co.*, 133 Mo. App. 229 [113 S. W. 253]). The rule in Dumpor's case contravenes these rules of law and denies the lessor the right to select his own lessee and protect his reversionary estate. The rule in Dumpor's case has virtually been overturned by another doctrine established in regard to conditions. This is the doctrine of continuous conditions, which has long been applied both in this country and in England. ■ Thus it is well settled that the waiver of a condition as to one subletting does not discharge the condition (*Goodwin* v. *Grosse*, 56 Cal. App. 615 [206 Pac. 138]; *Miller* v. *Newton-Humphreville Co.* (N. J. Ch.), 116 Atl. 325; *Doe* v. *Bliss*, 4 Taunt. 735; *Farr* v. *Kenyon*, 20 R. I. 376 [39 Atl. 241]; *Seaver* v. *Coburn*, 10 Cush. (Mass.) 324; *Harmon* v. *Dickerson* (Mo. App.), 184 S. W. 139).

The question presented, then, is have the California courts, as intimated in the Wyoming case cited, bound themselves to the doctrine announced in the Dumpor's case?

*Chipman* v. *Emeric*, 5 Cal. 49 [63 Am. Dec. 80], is the earliest California case reported touching this question. There, in February, 1851, A leased to B the premises in dispute for a term of six years. The lease contained a provision that the lessee should not assign to any person without obtaining the consent of the lessor. B assigned the leasehold to C with the consent of A, and C assigned to D without the consent of A. The Dumpor's case, however, is not mentioned in the opinion of the court. The court held that the assignment to C with the consent of A (lessor) was "Sufficient to abrogate the covenant against assignment," and said: "It is questionable whether, in any case, such a covenant would be enforced so as to provide a forfeiture. It is a restraint on alienation, and therefore against the policy of the law." It is apparent that there are two grounds upon which the decision may be based: "One, the rule in regard to the abrogation of the covenant; the other, the rule of restraint against alienation. The case may be

sustained upon this second ground announced in the opinion, for by the provisions of the lease the only party restrained from assigning the lease was the *lessee*. *The assigns are not mentioned.* There can be no doubt on these facts that the covenant or condition was single and bound no other party or parties than the lessee. The case, therefore, comes within the rule "that forfeiture of estates and restraints upon alienation should not be enforced except when the terms of the conditions are so plain as to be beyond the province of construction" (*Randol* v. *Scott,* 110 Cal. 590 [42 Pac. 976]; *Jameson* v. *Chanslor-Canfield Oil Co.,* 176 Cal. 1 [167 Pac. 369]; *Spangler* v. *Spangler,* 11 Cal. App. 321 [104 Pac. 995]).

*McGlynn* v. *Moore,* 25 Cal. 384, 395, 296, cited, was a case in which the lessors claimed a forfeiture by reason of a breach by lessees of their covenant to build a warehouse, as specified in the lease, within two years. Provision was made in the lease for the re-entry of the lessor "if default shall be made in any of the covenants on the part and on behalf of the said parties of the second part to be kept or performed," and under it the lessor had the right of re-entry for a forfeiture incurred in consequence of a breach of the covenant to build. The question arose as to whether or not the receipt of rent after a knowledge of the breach of the covenant to build waived the lessor's right to re-enter the premises for condition broken. The court held that the covenant to build was single which would admit of only one breach, and that receipt of rent by the lessor after that breach lost him the right to re-enter or forfeit the lease because of it. It is true the court in *dicta* states that covenants against assignments "are not continuing covenants, because the parties contemplated by such covenants to provide for the doing or the omission of a single act." This language was entirely unnecessary to the decision of the case and is therefore mere *dictum.* The holding in the Mc-Glynn case is clearly expressed in *Stevinson* v. *Joy,* 164 Cal., at page 283 [128 Pac. 753], where it is said: "It appeared that after the failure to build the warehouse the landlord accepted rent. The court declared that the acceptance of rent with full knowledge of the facts constituting a breach of the covenant was a waiver of the forfeiture, unless the covenant to build was a continuing covenant. *It*

*determined upon the language of the lease that it was not a continuing covenant."* (Italics ours.)

In *German American Sav. Bank* v. *Gollmer,* 155 Cal. 683 [24 L. R. A. (N. S.) 1066, 102 Pac. 932], the covenant against assignment without the consent of the lessor bound the lessee only, as was the case in *Chipman* v. *Emeric, supra,* commented upon, and *Randol* v. *Tatum,* 98 Cal. 390 [33 Pac. 433], cited. While the court does parenthetically remark that a condition against assignment is necessarily single in its nature, the language is clearly unnecessary, to a decision of the case. The condition against assignment, being binding only on the lessees, was personal to them, and obviously there could be but one breach, and a waiver of that breach would wipe out the condition. The Gollmer case has been cited through the reports of this state, but we find no case in which it is cited as sustaining the doctrine of Dumpor's case. If, however, it was intended in the earlier cases to intimate that the doctrine announcel in Dumpor's case under analogous facts would be followed in this state, such intimation was not carried out, for in the somewhat recent case of *Rothrock* v. *Sanborn,* 178 Cal. 693 [174 Pac. 314], a different rule is announced. In that case there was the usual provision against assignment without the consent of the lessor with forfeiture attached if such assignment were made. After the execution of the original lease, the lessees with the consent of the lessors assigned to Mr. and Mrs. Kendis. It was also provided in the consent that before the lease could again be assigned the consent of the lessors must be obtained. "And we hereby consent that the said lease may be transferred by the said Mr. and Mrs. A. P. Kendis to Mrs. Nell L. Rothrock. This consent shall not be treated in any way as waiving any of the provisions of said lease, nor shall the same be assigned or transferred by the said Mrs. Nell L. Rothrock to any person, without our consent first being had and obtained, and then only according to the provisions of paragraph XII of said lease." Paragraph XII provided a stipulated sum to be paid as a consideration for consent to a transfer of the lease. In that case it was necessary to provide that consent for the assignee to assign should be obtained by reason of the failure to make in the original lease the covenants, conditions, etc., binding upon the heirs, assigns, etc., of the lessees. That was a typical case

for the application of the rule in Dumpor's case; yet nowhere in the opinion does the Dumpor's case nor the rule set forth in it appear; the court enforced against the assignee a provision of the lease restraining an assignment except upon the consent of the lessors. The court not only failed to apply the rule in Dumpor's case—that is, that a covenant against assignment without the consent of the lessor is indivisible and unapportionable and is beyond the capacity of the contracting parties to qualify or control—but held adversely thereto. This case permits the parties to apportion the condition by contracting in regard thereto. It applies the rule that the plain provisions of the lease must control (*Perry* v. *Gross*, 172 Cal. 468 [156 Pac. 1031], subject to the rule of law that where forfeitures are provided for in the lease a strict construction will be invoked against forfeitures and that forfeitures will only be sustained where they are clearly and unequivocally provided for. As was said in *De Angeles* v. *Cotta*, 62 Cal. App. 691 [217 Pac. 821]: " 'It has been said . . . that covenants against assignment or underletting are not favorably regarded by the courts and are liberally construed in favor of the lessees. But this means only that the scope of the term "assignment" will not be enlarged by the courts, and that the covenant will not be considered as violated by any technical transfer that is not fairly and substantially an assignment' (*White* v. *Huber Drug Co.*, 190 Mich. 212 [157 N. W. 60]). This does not mean that the courts may make for the parties *a different contract from what they agreed upon or resort to a strained and unnatural construction to defeat or nullify their clearly expressed purpose and intention.*" (Italics ours.)

In the present case the original lease provides that the lessees "shall not assign, pledge, hypothecate or otherwise dispose of this lease nor any portion of the term of this lease, and shall not sublet the premises nor any portion thereof without the written consent of the said lessors first had and obtained," and further that "this lease and all its covenants, agreements and conditions shall bind said lessors . . . and shall bind said lessees, their heirs, executors, administrators and successors *and also their assigns, in case of an assignment of. said lease* by and with the written consent of the lessors."

■ It must follow from the holding in *Rothrock* v. *Sanborn, supra,* under the covenant in the lease here making the condition as to assignment of the lease binding upon the lessees *"and also upon their assigns"* in case of assignment with the written consent of the lessors that such covenant is a continuing covenant and that therefore respondent could not assign the lease without the consent of appellants.

The form of the instrument under which the respondent went into possession of the demised premises is of such a character that it presents the question as to whether or not the result of it is to make respondent a subtenant or an assignee of the original lessees. ■ It will be noted that the parties themselves have labeled the instrument a sublease but this fact alone would not constitute it such if there is a transfer of the whole leasehold leaving no reversionary interest as in the case here (*Jeffers* v. *Easton,* 113 Cal. 345 [45 Pac. 680]; *Jordan* v. *Scott,* 38 Cal. App. 739 [177 Pac. 504]).

The exact test for determining when an instrument is a sublease or an assignment is prescribed by the court in *Barkhaus* v. *Producers' Fruit Co.,* 192 Cal. 200, 205, 206 [219 Pac. 435, 437]. It is there said: "It is elementary that a sublease, in order to operate as an assignment, must transfer to the sublessee the entire term of the original lessee in the whole or some part of the demised premises. . . . The term thus referred to is not measured by the length of time for which it runs, but is measured as well by the extent of the premises which it covers and the nature and extent of the estate or interest therein which it embodies. . . . The term to be transferred to his assignee by such a tenant must be for a period of time at least equal to the remainder of the term of the original lease. . . . If by the terms of the conveyance, be it in the form of a lease or an assignment, new conditions *with a right of entry* (italics ours) or new causes of forfeiture are created, then the tenant holds by different tenure, and a new leasehold interest arises, which cannot be treated as an assignment or a continuation to him of the original term," and in *Dunlap* v. *Bullard,* 131 Mass. 161, the court says: "To constitute an assignment of a leasehold interest, the assignee must take precisely the same estate in the whole

or in a part of the leased premises which his assignor had therein. He must not only take for the whole of the unexpired time, but he must take the whole estate, or in other words the whole term. . . . The grant of an interest therefore, which may possibly endure to the end of the term is not necessarily a grant of all the estate in the term. . . . *If the smallest reversionary interest is retained the tenant takes as sublessee and not as assignee.''* (Italics ours.)

Here under the right of re-entry and forfeiture on breach of a contract reserved to the original lessee in the instrument labeled by the parties themselves a sublease, under the authorities quoted, it would seem the instrument is constituted a sublease and not an assignment, and the condition against subletting being a continuous covenant, the waiver of the condition as to one subletting does not discharge the condition (*Goodwin* v. *Gross, supra*); *Miller* v. *Newton-Humphreville Co., supra; Farr* v. *Kenyon*, 20 R. I. 376 [39 Atl. 241] ; *Harmon* v. *Dickerson, supra*). It follows therefore, whether the instrument in question be an assignment or a sublease, the same result obtains, and while respondent has the right to quiet and undisturbed possession of the premises under the terms of the lease upon complying with its terms, she would not be licensed to assign or sublet without the consent of appellants.

The extent, effect and operation of covenants in leases —that is, their construction—depends upon the intention of the parties as that intention is indicated by the express language of the lease (*Rothrock* v. *Sanborn, supra; Perry* v. *Gross, supra; De Angeles* v. *Cotta, supra; Pedro* v. *Potter*, 197 Cal. 751 [42 A. L. R. 1165, 242 Pac. 926] ). It may also be said that the construction of the condition of the lease against assignment placed upon it by the parties themselves as evidenced by their acts and conduct is important, and if the meaning of the language of an instrument can be considered doubtful, the court will call in the aid of the acts done under it as a clue to the intention of the parties (*Hill* v. *McKay*, 94 Cal. 5 [29 Pac. 406] ; *Rockwell* v. *Light*, 6 Cal. App. 563 [92 Pac. 649] ; *Dollar* v. *International Banking Corp.*, 10 Cal. App. 83 [101 Pac. 34] ; *Vulcan Iron Works* v. *Cook*, 15 Cal. App. 410 [114 Pac. 995] ; *Keith* v. *Electrical Engineering*

*Co.*, 136 Cal. 178 [68 Pac. 598]; *Kennedy* v. *Lee*, 147 Cal. 596 [82 Pac. 257]; *Mitau* v. *Roddan*, 149 Cal. 1 [6 L. R. A. (N. S.) 275, 84 Pac. 145]; *Woodard* v. *Glenwood Lumber Co.*, 171 Cal. 513 [153 Pac. 951]; *Retsloff* v. *Smith*, 79 Cal. App. 443, 249 Pac. 886]). As was said by Lord Chancellor Sugden: "Tell me what you have done under a deed and I will tell you what that deed means." Here there can be no doubt but that the lessors and lessees in drawing the lease intended that the conditions of the lease, including the one against assignment without the consent of the lessors, were to be binding on the lessees and their assigns, as the lease contained the express provision protecting against assignment by providing that the conditions of the lease shall be binding on the assignees even though the lease is assigned with the written consent of the lessors.

Respondent believed it was necessary to obtain the consent of appellants before she could assign the lease. The court found that an application for such consent was made but was refused by appellants with the statement that no assignment could be made without their consent. ██ If there were any doubt as to what the parties to the contract understood their rights to be in regard to the survival of the conditions of the original lease and particularly the condition against assignment without consent, the application of respondent to appellants to consent to an assignment and appellants' refusal dispels such doubt. As was said in *Mitau* v. *Roddan*, 149 Cal. 1 [6 L. R. A. (N. S.) 275, 84 Pac. 145]: "It is assumed that parties to a contract best know what was meant by its terms, and are the least liable to be mistaken as to its intention; that each party is alert to his own interests, and to insistence on his rights, and that whatever is done by the parties contemporaneously with the execution of the contract is done under its terms as they understood and intended it should be. Parties are far less liable to have been mistaken as to the intention of their contract during the period while harmonious and practical construction reflects that intention, than they are when subsequent differences have impelled them to resort to law, and one of them seeks a construction at variance with the practical construction they have placed upon it."

Respondent contends that there is no restraint against assignment applicable to her for the reason that the Barkers having granted to her the right to assign her interest without obtaining their consent or the consent of any other person, appellants are therefore estopped to deny because of the Barkers' contract, her right to assign her lease without their consent. This asserted proposition has no foundation in legal reason or principle. In the first place appellants did not sign the agreement entered into between the Barkers and respondent whereby the latter was given the right to assign the lease without first obtaining the consent of any person. There is lacking, therefore, as between appellants and respondent that privity of contract which is essential in order to charge a party on a contractual obligation. It is a proposition of law, so well established as to be almost axiomatic, that a party cannot be charged upon a contract to which he is not a party. Respondent recognizes this principle but maintains that since the contract between the Barkers and herself was entered into on the same day as the other instruments, exhibits "A," "B" and "C," the contract formed a part of the same transaction, and hence the defendants were bound by it as effectively as though they had agreed thereto. This rule of interpretation cannot be applied to any set of contracts entered into between different parties and by such application made to create, in contravention of fundamental principles of law, a contractual obligation where none existed or was intended by the parties. If this were the case it would be possible for courts, on the assertion that they are interpreting a contract, to create one where none existed.

In the second place, the above rule can only apply to exhibits "A," "B" and "C," and cannot include the agreement made the same day but subsequently between the Barkers and respondent. This is obvious for the reason that the only contract in which there is a unification of interest among the Barkers, respondent and appellants is embraced in these three exhibits. This is apparent from the fact that exhibits "A" and "B" are signed by the Barkers and appellants and exhibit "C" is signed by the Barkers and respondent, and exhibit "C" expressly incorporates therein exhibit "A" and makes it a part thereof, and re-

spondent contracts to perform all the terms and conditions of the original lease. Thus, while appellants have not signed exhibit "C," they have, we think, been included therein by the contracting parties sufficiently to make it possible to apply to it the rule of interpretation stated. If this permission from the Barkers to respondent to assign her interest without the consent of any person had been incorporated in or made a part of any one of the above-named exhibits, there might be plausibility in the argument advanced by respondent. In exhibit "B," however, instead of their being any intimation that the Barkers might assign or sublet their lease to another person and give to that person the unqualified right to assign without first obtaining the consent of any person, there is the expressed declaration that respondent may sublease the premises provided the terms and obligations of the lease entered into between the Barkers and appellants are fully kept and performed.

In the third place, it is evident that the Barkers could not grant to respondent, in contravention of the right of appellants, a greater estate in the property than they themselves had. Nor could respondent by virtue of her contract with the Barkers assign her lease without first obtaining the consent of appellants, for her rights are measured by those of the Barkers. Having taken with actual notice of the terms and conditions of the original lease, respondent, when she entered into the contract with the Barkers, by the terms of which she was to be permitted to assign her lease without the consent of any person, had knowledge of the fact that the lease could not be assigned without the written consent of appellants. It must be taken, therefore, that she knew that her contract with the Barkers was qualified by the right of appellants to insist that an assignment could be validly made only after their consent had been obtained, or, in other words, it must be taken that she knew that her contract was subject to the restrictive provisions in the original lease.

It is evident from the foregoing that unless appellants have, by accepting the surrender of the Barkers' interest in the lease, bound themselves to the contract between the Barkers and respondent, they have not forfeited nor waived nor contracted away their right to insist that their

permission be obtained before the lease is assigned. We think, however, that the effect of the surrender of Barkers' interest in the property to appellants does not subject them to that contract.

In *Cesar* v. *Virgin,* 207 Ala. 148 [24 A. L. R. 715, 92 South. 406], which was a case involving in part a lease from A to B of a business house for a period of five years, by the terms of the original lease it was not to be assigned nor the premises sublet without the consent in writing of the lessors, nor were the premises to be used for any other than mercantile purposes. B sublet a portion of the premises to C for use and occupation as a shoe-shining and hat-cleaning establishment and for no other object or purpose. C assigned to D. B then voluntarily surrendered his original leasehold interest to A. A sought to forfeit the lease because of the violation of several covenants in the lease, among which was the one not to use the premises for other than mercantile purposes. D brought an action to be relieved of the forfeiture. In discussing the effect of the surrender of the head lease to A on the terms in the sublease which permitted the subtenant in violation of the covenants of the head lease to use the premises for other than a shoe-shining and hat-cleaning establishment, the court said: "But complainants claim under a sublessee, and it is true that a lessee cannot surrender his term to the prejudice of his assignee or subtenant (*Brock* v. *Desmond,* 154 Ala. 634 [129 Am. St. Rep. 71, 45 South. 665]), and that third persons who have acquired interests in the premises may have relief against a forfeiture when their right would be defeated thereby (*Morey* v. *Hoyt,* 62 Conn. 542 [19 L. R. A. 611, 26 Atl. 127]). This, however, assumes that the sublease does not offend against the rights of the original lessor, for a sublessee is charged with notice and bound by all the conditions of the original lease. . . . The act of the original lessee in surrendering his lease was not the surrender of any right, but an assent to the right of his landlord under the terms of the original lease. As we said in *Bancroft* v. *Vizard,* 202 Ala. 618 [81 South. 560], the assignee becomes responsible to the original lessor on the covenants of the original lease on the ground that he makes himself a privity in estate with the original lessor, if the lessor chooses

to pursue him. But in this case we apprehend that it is not a matter of consequence whether the complainants be held for assignees or sublessees. In neither case can they have a better right than their lessor. In neither case have they been able to deprive defendant, original lessor, of the benefit of the covenant other than the covenant for rent, upon considerations of which she entered into the original contract of lease.''

■ Respondent asserts: ''If it be assumed that the restriction against assignment was not extinguished and the plaintiff was obligated to obtain the consent of the defendants, then the defendants breached their agreement to give their consent.'' This contention is based on the following clause in the senior lease, which, after restricting the right of the lessees to assign, provides: ''Said lessees may, with the written consent of said lessors, assign said lease to any person or persons of good character and repute and satisfactory to the lessors, upon furnishing good and sufficient security to be approved by said lessors.''

In answer to this contention of respondent that appellants have breached their agreement by refusing to consent to an assignment by respondent to Arthur L. Roberts, who was a person of good character and repute, and that therefore respondent has suffered damage, appellants assert that the only possible effect that this latter proviso can have upon the absolute covenant of the lessee not to assign without the consent of the lessor is to qualify such covenant and to read into it a provision that the lessors will not uphold their consent if a person satisfactory to themselves is proposed: that the effect of the proviso is not to create a covenant on the part of the lessors to the effect that they will consent to an assignment, if a party of good character and repute and satisfactory to them is proposed.

Appellants' contention finds support in the authorities. In the recent New York case of *Sarner* v. *Kantor* (1924), 123 Misc. Rep. 469 [205 N. Y. Supp. 760], in discussing this question, the court says: ''Plaintiff alleges unreasonable refusal to consent to a sublease, and demands damages and the return of the deposit under the lease. Plaintiff cannot recover unless this fourth clause ('nothing herein contained shall permit the landlord to unreasonably withhold his consent to

any sublease') is a covenant by the defendant not unreasonably to withhold his consent to a sublease. The purpose of the provision is to protect the lessee against liability for damages or risk of forfeiture if consent of lessor is improperly withheld (Tiffany, Landlord & Tenant, sec. 152, p. 933; 2 Underhill, Landlord & Tenant, sec. 632, p. 1063). Nowhere does the lessor expressly covenant not to withhold his consent unreasonably. The only covenant is by the plaintiff not to sublet and it is the plaintiff's own covenant that is qualified by the condition that the lessor shall not unreasonably withhold his consent. The cases of *Sear* v. *House Property & Investment Society*, L. R. 1880–81, 16 Ch. Div. 387, and *Treloar* v. *Bigge*, L. R. 1873–74, 9 Exch. 151, are controlling.''

In the case of *Sear* v. *House Property & Investment Society* (L. R. 1880–81, 16 Ch. Div. 387), cited by the New York court, the English court said: ''The question is one of construction of the language of the deed. Do the words contained in the clause 'but such consent not to be unreasonably withheld' amount to a contract upon the part of the lessor that he will not unreasonably withhold his consent, or do they merely amount to a qualification of the covenant in which they are found, and which was entered into by the lessee, so that if the consent be unreasonably withheld, the lessee assigning does not break his covenant? If I were to decide the question quite irrespective of authority, I should say that a fair reading of the covenant that the words referred to merely qualify the obligation contained in the clause itself—that the lessee would not assign without consent. The words are inserted in the lessee's covenant, and they are put in the form which looks more like a qualification than a contract.''

In *Andrew* v. *Bridgman* (1908) 1 K. B. 596–598, the court said: ''It has long been settled that the effect of a proviso of that kind is not to impose an obligation on the lessor to give a consent, but, in case it is reasonably withheld, to release the lessee from the obligation of the covenant and to enable him to assign without obtaining any license.''

In opposition to the views here expressed, respondent has cited the case of *Broadway & 94th St., Inc.,* v. *C. & L. Lunch*

*Co.*, 116 Misc. Rep. 440 [190 N. Y. Supp. 563]. That case is clearly distinguishable from the present case and cases here cited. In that case, which was decided on a demurrer to a complaint alleging that the proposed lessee was acceptable to the lessors, it is true that a promise of positive action on the part of the landlord was raised by implication. But it is to be noted that there the tenant had complied with certain onerous obligations, that he fitted up the premises as a first-class restaurant, which was made a condition precedent to consent by the landlord, and it was therefore held that there was a reciprocal obligation resting on the landlord to act affirmatively in reference to the assignment desired. Here no such condition existed.

We think the trial court's decision that such provisions in leases do not create covenants on the part of the landlord is correct. But, even assuming that there was some sort of a covenant created by the provision in the lease, that covenant could only be one in which the defendants agree to consent to an assignment of the lease when ''any person or persons of good character and repute and *satisfactory to the lessors*'' are procured.

The findings in the case do not say that Roberts was a person who was satisfactory to the appellants. They merely state that ''said Arthur S. Roberts, at all times mentioned in plaintiff's complaint, was and now is a fit, suitable, proper and responsible person of good character and repute.'' The general rule in cases where the agreement calls for performance by one party to the satisfaction of the other is that the party to be satisfied is the sole judge of his own satisfaction, subject only to the limitation that he must act in good faith. Here, as found by the court, there was no bad faith on the part of appellants. This left them free to insist that the assignee shall be a person satisfactory to themselves, because this was a case involving the individual judgment of appellants. As was said in *Tiffany* v. *Pacific Sewer Pipe Co.*, 180 Cal. 700, 702 [182 Pac. 428, 429], ''when one party agrees to perform to the satisfaction of the other, he renders the other party the sole judge of his satisfaction without regard to the justice or reasonablent of his decision, and a court or jury cannot say that suc

party should have been satisfied where he asserts that he is not.''

It cannot be assumed or implied, therefore, from the finding quoted, that Roberts was a fit, suitable, proper and responsible person of good character and repute and that appellants were in fact *satisfied or ought to have been satisfied.* The appellants being the sole judge of a satisfactory person there must be, in order to show a breach of the covenant, if there be such a covenant, an affirmative finding that appellants were actually satisfied, but still failed to consent, or acted in bad faith in claiming that they were not satisfied.

We conclude from the foregoing that there was not only no covenant on the part of the defendants to agree to the assignment, but that even assuming that there was such a covenant, respondent has failed to show that there was a breach thereof. Furthermore, there was not only no covenant on the part of the lessors to consent to an assignment but there was also no such qualification of the lessee's restrictive covenant, which, as the lower court decided, would give the respondent the right to assign her lease without the consent of appellants, if the latter should unreasonably withhold their consent to an assignment (*Tiffany* v. *Pacific Sewer Pipe Co., supra*).

 The trial court found that Roberts was a person of good character and repute and that appellants arbitrarily and unreasonably refused to accept him as an assignee. This finding is not only opposed to the terms of the lease, since appellants never covenanted that they would not arbitrarily and unreasonably withhold their consent, but is opposed to the express terms of the lease, that is, the right of appellants to be satisfied with the proposed assignee and their right even unreasonably to insist upon being satisfied (*Tiffany* v. *Pacific Sewer Pipe Co., supra; White* v. *Huber Drug Co.*, 190 Mich. 212, 215 [157 N. W. 600]). To reach the result it did, the court has been compelled to read into the lease terms not put there by the parties and to strike therefrom terms actually contained therein. Of course, under a covenant such as we have here, if an assignee were presented who was of good character and repute and was in fact satisfactory to the lessor, but such lessor in bad faith

and in order to prevent the lessee from effecting an assignment without additional benefits to himself withheld his consent, the lessee would be at liberty to assign and would be relieved from the obligation of the covenant.

As to the damages alleged to have been suffered by respondent by reason of appellants' refusal to consent to an assignment of the lease to Roberts, and regarding which the court found ''that plaintiff has not sustained monetary damage by reason of any matters or things set forth in the second or third cause of action pleaded in the complaint herein,'' and from the judgment on such finding respondent herein has appealed in the case of *Minnie Kendis, Plaintiff and Appellant,* v. *A. B. Cohn et al., Defendants and Respondents,* (No. 6183,) *post,* p. 796 [265 Pac. 855], it may be said that this appeal is taken on the judgment-roll alone, and there is therefore a total absence of any transcript of the evidence or bill of exceptions. Under such circumstances it will be presumed that the evidence offered in support of the findings was sufficient to support the facts found (*Harmon* v. *De Turk,* 176 Cal. 758, 761 [169 Pac. 680]; *O'Meara* v. *Hables,* 163 Cal. 240, 241 [124 Pac. 1003]; *Cutting Fruit Packing Co.* v. *Canty,* 141 Cal. 692, 695 [75 Pac. 564]; *Ross* v. *McCarthy,* 54 Cal. App. 568, 570 [202 Pac. 161]). It is a well-settled rule that findings of fact made by the trial court are to receive such construction as will uphold rather than defeat its judgment thereon (*Paine* v. *San Bernardino etc. Co.,* 143 Cal. 654, 656 [77 Pac. 659]; *Randisi* v. *Simone,* 26 Cal. App. 661 [147 Pac. 1176]). And if different inferences may be drawn from the facts as found, this court will not upon an appeal from the judgment on the judgment-roll alone draw an inference contrary to that drawn by the trial court or which will have the effect to defeat the judgment (*Breeze* v. *Brooks,* 97 Cal. 72, 77 [22 L. R. A. 257, 31 Pac. 742]; *Gould* v. *Eaton,* 111 Cal. 639, 644 [52 Am. St. Rep. 201, 44 Pac. 319]; *People's Home Sav. Bk.* v. *Rickard,* 139 Cal. 285, 291 [73 Pac. 858]; *Akley* v. *Bassett,* 68 Cal. App. 270, 292 [228 Pac. 1057]). It follows, therefore, that the findings that appellants did not act maliciously and without probable cause and that respondent has not sustained monetary damage upon this appeal upon the judgment-roll alone are conclusive upon this court. Bad faith is a

question of fact to be determined by the jury or by the trial court, and the court not having found that appellants acted in bad faith, this court will not in the absence of evidence make such a finding (*Hamaker* v. *Bryan,* 178 Cal. 128, 129 [172 Pac. 391]). ■ Malice, express or implied, in the making of slanderous statements, is an essential ingredient in an action for slander of title, without proof of which it fails (16 Cal. Jur. 161; *Fearon* v. *Fodera,* 169 Cal. 370, 380 [Ann. Cas. 1916D, 312, 148 Pac. 200]).

It follows that the judgment must be reversed, and it is accordingly so ordered.

Tyler, P. J., and Knight, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 7, 1928.

All the Justices concurred.