BERRY OIL CO. v. UNITED STATES.
No. 43258.

Court of Claims.

Nov. 14, 1938.

As Amended Jan. 9, 1939.

Robert A. Littleton, of Washington, D. C. (M. K. Wild, of Fresno, Cal., on the brief), for plaintiff.

Guy Patten, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

In 1926, C. J. Berry received a lease from one George Tourny, the owner of certain lands in California, under which Berry was given the right to drill for oil or gas for a period of twenty years and as long thereafter as oil or gas was produced in paying quantities. The conditions of the lease are shown in the findings but none of them raise any controversy in the case. The plaintiff corporation became the owner of this lease and since about 1928 has operated the property, drilling the wells required thereby and obtaining some oil and gas therefrom. The plaintiff, however, sunk no wells below a level of 1,000 feet. In 1930, the plaintiff entered into a contract with the General Petroleum Corporation with reference to the oil and gas which might be found below 2,000 feet on the leased tract. This contract was in two parts. One part was in the form of a letter in which the corporation last named agreed to do certain things in event the plaintiff executed an agreement annexed. This agreement was shortly thereafter signed by the plaintiff and constitutes the other part of the contract. In the letter the General Petroleum Corporation, among other things, agreed to pay plaintiff the sum of $150,000 on the execution of the agreement, also to proceed with the drilling of a well in accordance with the agreement, and, if the well were deemed to be a commercial producer, to pay plaintiff the further sum of $850,000, less one-half the cost of drilling it. The agreement referred to the original lease held by plaintiff and, among other things, stated that plaintiff assigned to the General Petroleum Corporation an undivided one-half interest in all rights which it might have under the lease to drill for and remove oil and gas from depths below 2,000 feet. It further provided that the General Petroleum Corporation during the term of the lease should have the sole right to drill and remove oil and gas at the depth specified above, and recited in detail a number of specifications in regard to the well or wells to be drilled which it is not necessary to repeat here. The agreement also provided that as to the distribution of the proceeds of any oil or gas produced by the General Petroleum Corporation they should first be applied to the payment of taxes; second, to the payment of the royalty on the Tourny lease; third, to the cost of drilling and operations connected therewith; fourth, to certain contingent or future claims in a specified amount; and that the remainder should be paid one-half to the General Petroleum Corporation and one-half to plaintiff each month.

The plaintiff having executed the agreement, in accordance therewith $150,000 was paid to it about May 23, 1930. The General Petroleum Corporation, pursuant to the contract, entered on the premises and drilled a well to a depth of 11,377 feet which, however, produced no oil or gas in paying quantities. No other well was started and no oil or gas has been produced in paying quantities from the premises below the 2,000-foot level.

The issue in the case is whether the plaintiff is entitled to a depletion allowance on the $150,000 which it received from General Petroleum Corporation. The plaintiff contends that the contract between it and the General Petroleum Corporation was in part a sublease and that the $150,000 paid was a bonus. On the part of the defendant it is contended that there was no sublease; that the contract constituted an assignment for the execution of which the $150,000 was paid; and that in any event there was no depletion of the plaintiff's interest in oil or gas below the 2,000-foot level at any time and therefore the plaintiff was not entitled to a depletion allowance on the $150,000 paid.

It is urged on behalf of plaintiff that the agreement between it and the General

Petroleum Corporation constituted in fact a sublease. The case of Hartman Ranch Co. v. Associated Oil Co. et al., Cal.App., 55 P.2d 1280, is cited as holding in effect that the agreement between plaintiff and the General Petroleum Corporation was a sublease and the opinion in this case quotes from Barkhaus v. Producers' Fruit Co., 192 Cal. 200, 219 P. 435, as follows [page 1281]: "It is elementary that a sublease, in order to operate as an assignment, must transfer to the sublessee the entire term of the original lessee in the whole or some part of the demised premises." So far as we have stated the quotation, we do not think it sustains the contention of plaintiff but the opinion goes on to say: "Where the lessee reserves the right of re-entry upon failure of his transferee to pay rent or upon violation of covenants, the lessee does not part with his entire term or estate, and the retention of such contingent reversionary interests creates a subtenancy. Backus v. Duffy, 103 Cal.App. 775, 779, 284 P. 954; Kendis v. Cohn, 90 Cal.App. 41, 58, 265 P. 844."

It is argued on behalf of plaintiff that this language is applicable to the case at bar, but we have a somewhat different state of facts in the case before us, as will be seen when the features of the contract material to the case are more fully considered.

■■ The contract is not very logically drawn, to say the least, but we think that on the whole the intent of the parties is fairly plain. The General Petroleum Corporation submitted to the plaintiff a proposition to pay the sum of $150,000 on the execution of an agreement annexed, and the further sum of $850,000 under certain conditions. This proposition further included a statement of the obligations of the Petroleum Corporation in case the agreement was executed and the proposition consummated, particularly with reference to the drilling of a well or wells.

As already shown, the agreement was executed by the plaintiff and set out in detail certain covenants on the part of the General Petroleum Corporation relating to the drilling of the well or wells and providing for what we think amounted to a provision for the forfeiture of the contract and the right of plaintiff to re-enter the premises in case the General Petroleum Corporation did not comply with its agreements. The most important provision in the agreement was, however, that the plaintiff assigned to the General Petroleum Corporation an undivided one-half interest in any and all rights which it had under the original lease to drill for and remove oil and gas from the depths below 2,000 feet, and that the last-named company should have the sole and exclusive right for the entire term of the original lease of prospecting and drilling for and removing oil and gas from the leasehold at depths greater than 2,000 feet. The agreement further provided that the proceeds of the oil or gas obtained should be applied first to the payment of taxes; next to the payment of the royalty on the original lease; then to the reimbursement of the General Petroleum Corporation for expenses in drilling and in connection therewith; also that a certain sum might be retained to cover contingent or future claims the nature of which was specified; and finally, that after all of these payments had been made, the balance of the proceeds should be distributed 50 per cent to plaintiff and the remainder to the General Petroleum Corporation.

We doubt whether the decisions of the California courts can control the application of the Federal law to a case of the nature of the one which we have before us. But in any event, we think the name given under some technical rule to the transaction between the parties is not as important as the intent and purpose of the statute when applied to the particular circumstances of the case. The Federal cases cited and discussed by the respective counsel all differ somewhat in their facts from the one now before us.

In Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489, relied upon by plaintiff, the Supreme Court held in effect that the Federal statute determined to what interest the depletion should be applied and that the local law in respect to whether the instrument was an assignment or a sublease did not necessarily control, saying (page 555, 53 S.Ct. page 226): "The formal attributes of those instruments or the descriptive terminology which may be applied to them in the local law are both irrelevant."

In the case last cited a deduction was allowed, but this allowance was made under section 214(a) (10) of the revenue act of 1921, 42 Stat. 239, which permitted a deduction for depletion in the case of oil and gas wells discovered by the taxpayer after March 1, 1913, on the basis of the value of the property at the date of the discovery or within thirty days thereafter. The facts do not appear in the Supreme Court decision

but are found in the opinion of the District Court (49 F.2d 316) and were quite different from those in the case now before us. The original payment was not made upon a sale but as the Supreme Court found was a bonus which was a return pro tanto of the petitioner's capital investment in the oil and resulted "in a corresponding diminution in the unit depletion allowance upon the royalty oil as produced".

We think the rule which should be applied in the instant case is that depletion must be based upon an economic interest in the oil in place and that the oil must be depleted by production.

The case of Elbe Oil Land Development Co. v. Commissioner, 9 Cir., 91 F.2d 127, relied upon by plaintiff, was reversed by the Supreme Court on March 7, 1938, 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904, and the transaction held to be a sale of the properties in question. The Supreme Court said (page 375, 58 S.Ct. page 622): "The words 'gross income from the property,' as used in the statute governing the allowance for depletion [28 U.S.C.A. § 114 note] mean gross income received from the operation of the oil and gas wells by one who has a capital investment therein,—not income from the sale of the oil and gas properties themselves."

The case of Herring v. Commissioner, 293 U.S. 322, 55 S.Ct. 179, 79 L.Ed. 389, also cited by plaintiff, involved a claim for depletion on account of bonuses and advance royalties received by the landowners for oil and gas leases executed by them. We think the payment made in the case at bar was not a bonus or advance royalty but the purchase price of the agreement executed between the parties. The Herring Case, supra, not only involved a lease but there was no question about the advance payments being bonuses and royalties. The Supreme Court held that the depletion allowance was not contingent upon production but we think this holding was intended to apply only to the particular circumstances of that case.

Darby-Lynde Co. v. Alexander, 10 Cir., 51 F.2d 56 (certiorari denied, 284 U.S. 666, 52 S.Ct. 40, 76 L.Ed. 564), arose under section 204(c) (2) of the revenue act of 1926, 44 Stat. 14, the provisions of which are similar to the 1928 act, § 114(b) (3), 26 U.S.C.A. § 114(b) (3) note. In that case the plaintiff owned certain oil and gas properties in Kansas which it sold in 1926 to another company for $1,000,000. It claimed depletion for the oil produced during the year prior to the sale and also on the $1,000,000. The court said that Congress had allowed depletion because it recognized the fact that "oil and gas reserves are wasting assets and become exhausted through the process of producing oil and gas." [page 58.] The claim for depletion on the $1,000,000 was denied, the court saying that this item had "no reasonable relation to the depletion actually sustained."

In the case before us, the plaintiff had disposed of one-half of the oil below the 2,000 foot level and had no investment therein after the agreement had been executed. It had an interest in the remaining half, but the nature of that interest was simply the right to receive it—not as rent or a payment but because it remained its property. In the case of Helvering v. Bankline Oil Co., 303 U.S. 362, 366, 58 S. Ct. 616, 618, 82 L.Ed. 897; the Supreme Court said: "The deduction is permitted * * * in recognition of the fact that the mineral deposits are wasting assets and is intended as compensation to the owner for the part used up in production. * * * The percentage is 'of the gross income from the property,'—a phrase which 'points only to the gross income from oil and gas.'" The court further said: "It is true that the right to the depletion allowance does not depend upon any 'particular form of legal interest in the mineral content of the land.'" And also that, "it is enough if one 'has an economic interest in the oil, in place, which is *depleted by production.*'" [Italics ours.] But in the case before us there was no depletion "by production."

Repeating the same thought, the Supreme Court said that the language of the statute was broad enough to provide for cases where the taxpayer has acquired by investment any interest in the oil in place and secures "income derived from the extraction of the oil." But the case before us is not of that nature.

We do not consider it necessary to determine whether a lease was created in view of the particular circumstances of the case at bar. The controlling matter in the case under the decisions cited is the fact that there was no depletion. The $150,000 received by plaintiff was for the assignment of a one-half interest in the oil and gas below 2,000 feet and while the plaintiff was thus divested of a one-half interest, the transaction being in the nature of a sale did not authorize a deduction for depletion. If

oil or gas in paying quantities had been discovered and used, plaintiff's remaining interest therein below 2,000 feet would have been depleted. But none was found. We do not think the statutory provisions with reference to a deduction for depletion were intended to apply to a case of the nature of the one before us in which there was in fact no oil or gas withdrawn and no depletion.

It follows that plaintiff's petition must be dismissed and it is so ordered.