[Civ. No. 2630.  Third Appellate District.—June 28, 1923.]

G. DeANGELES, Appellant, v. JOE D. COTTA et al., Respondents.

[1] LEASES — COVENANT AGAINST ASSIGNMENT — CONVEYANCE TO STRANGERS—SEPARATE ASSIGNMENTS—BREACH.—Where two out of several lessees, without the consent of the lessor, after acquiring the interests of their colessees to certain leased premises, execute separate assignments conveying the entire leasehold to persons

---

1. Assignment of lease as breach of covenant against subletting, notes, 7 A. L. R. 249; 17 A. L. R. 183.

Assignment and sublease distinguished, note, 7 Ann. Cas. 537.

who were strangers to the original lease, they thereby breach the covenant in such lease wherein it was agreed that the lessees would not "let or underlet the whole or any part of the said premises nor assign the lease, voluntarily or involuntarily, without the written consent" of the lessor.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge. Reversed.

The facts are stated in the opinion of the court.

T. B. Scott for Appellant.

H. K. Landram for Respondents.

FINCH, P. J.—This is an action of unlawful detainer brought to recover possession of certain lands on the alleged ground that the defendants had broken their covenant not to assign the lease under which they held. Defendants Luiz C. Amaro, Luiz Deniz, and George Silva failed to answer and default judgment was entered against them. The other defendants were given judgment and plaintiff has appealed.

The complaint alleges that "defendants" Joe D. Cotta, Luiz Deniz, Frank Deniz and Luiz C. Amaro, without the consent of first party in writing . . . or without his consent in any other manner given, and without his knowledge, did assign all their right, title and interest in and to said lease and the premises therein described to George S. Silva and Frank M. Tosta, defendants above named, on or about the third day of January, 1921; that plaintiff had no knowledge of said assignment until a few days prior to the time of filing this complaint; that pursuant to said assignment the said George S. Silva and Frank M. Tosta went into the actual possession of said premises and ever since said third day of January, 1921, have been and now are in possession of said premises." The complaint contains other allegations appropriate to an action of unlawful detainer and a copy of the lease is attached thereto. By the terms of the instrument, which is dated June 19, 1918, plaintiff leased the lands to defendants Joe D. Cotta, Frank Deniz, Luiz Deniz, and Luiz C. Amaro for a term of five years, with the option of an extension of five years additional. [1] Among other terms the lease pro-

vided: "If default shall be made in any of the covenants herein contained, that it shall be lawful for the said party of the first part to re-enter the said premises, and remove all persons therefrom. And the said parties of the second part do hereby covenant, promise and agree . . . not to let or underlet the whole or any part of the said premises nor assign this lease, voluntarily or involuntarily, without the written consent of the said party of the first part." The answers of the defendants deny that "Joe D. Cotta, Luiz Deniz, Frank Deniz and Luiz C. Amaro did assign all or any" of their right, title, or interest in or to the lease or the premises therein described. The court found in accordance with such denials and further, that "Joe D. Cotta, Luiz Deniz, Frank Deniz, and Luiz C. Amaro did not at any time jointly assign or transfer their interest in and to said lease and the premises therein described to George S. Silva and Frank M. Tosta, or either of them." The finding that the lessees did not "jointly assign" the lease suggests the only controversy on this appeal. The trial court said, in effect, that if the lessees all made individual assignments of their respective interests under the lease, without any understanding among them that they should do so, such acts would not work a forfeiture of the lease "even though, in spirit, it is absolutely broken, that won't do, it has got to be in the letter absolutely."

The plaintiff endeavored to prove the facts upon which he relied, but the court required him first to state what he expected to prove and, based upon such statement, objections were sustained to practically all of the evidence offered. In consequence of such procedure, the record on appeal does not enable this court to dispose of the case on its merits, but it must be assumed that plaintiff would have been able to prove all the facts embraced in his statement. In obedience to the requirement of the court, counsel for plaintiff proposed to prove that, about three years prior to the trial, Luiz Amaro assigned his interest in the lease to Joe D. Cotta and Luiz Deniz assigned his interest therein to Frank Deniz, the assignees going into possession; that on the 3d of January, 1921, Joe D. Cotta assigned his interest to George S. Silva, and on the third day of February, 1921, Frank Deniz assigned his interest to Frank M. Tosta, and that Tosta and Silva went into possession under the assign-

ments; "that the said Cotta and said Frank Deniz, at the
time of the transfer of their interest in said lease to said
Silva and said Tosta, arranged and conspired with said
Silva and said Tosta to arrange the payment of the rent,
the management of the dairy, in such a way that the said
DeAngeles, the plaintiff herein, would not know that any
assignment had been made by said Cotta and said Frank
Deniz to said Silva and said Tosta; that the dairy on said
ranch was conducted by said Silva and said Tosta as
partners."

The trial court based its interpretation of the law upon
the case of *Randol* v. *Scott*, 110 Cal. 590 [42 Pac. 976],
where it was held that a covenant by two lessees not to
assign the lease was not broken by the assignment by one
of them of his undivided half interest therein to his assignee
in insolvency, The court said that the lessees were tenants
in common of the land and that "neither could, therefore,
dispose of the interest of the other; nor could either prevent
the other from disposing of his interest. . . . When, there-
fore, under these circumstances it was covenanted merely
that the 'lessees' should not assign 'the lease'—the lease, as
an entirety—the meaning of the parties is presumed to be
that the lease should not be assigned in the only way in
which it could have been assigned, namely, by the joint act
of the lessees. . . . The covenant does not provide that the
lease should be forfeited upon the assignment by one of the
tenants in common of his interest." Respondent attaches
too great importance to the word "joint" as used in the
foregoing quotation. The language used cannot be under-
stood to mean that the two lessees could assign their lease
only by joining in the execution of a single instrument of
transfer, or by executing separate instruments pursuant to
an understanding between them that they would do so, be-
cause, manifestly, the lease could be assigned by the execu-
tion of independent transfers by the lessees, each even being
in ignorance of the act of the other. In *Spangler* v. *Spang-
ler*, 11 Cal. App. 321 [104 Pac. 995], it was held that an
assignment by one of two lessees to the other is not a breach
of the covenant against assignment. No case has been cited
or discovered, however, holding that separate assignments
by the lessees of the respective interests of all of them do not
constitute a breach of a covenant not to assign. In other

jurisdictions it has been held that an assignment by one lessee to another is such a breach. (*Tober* v. *Collins*, 130 Ill. App. 333; *Saxeney* v. *Panis*, 239 Mass. 207 [131 N. E. 331]; *Miller* v. *Pond*, 214 Mich. 186 [17 A. L. R. 179, 183 N. W. 24]; *Loveless* v. *Fitzgerald*, 42 Can. Sup. Ct. 254 [16 Ann. Cas. 316, 2 B. R. C. 809, and notes].) In *Tober* v. *Collins*, it is said: ''To the extent of the interest transferred it is obvious that the lease is assigned. To hold otherwise would often defeat the purpose of covenants against assignments without consent. By the assignment of individual interests at different times to different persons, an entirely different tenant, or set of tenants, could be readily substituted for the original tenant or tenants without the consent of the lessor, thus thrusting upon him undesirable or objectionable tenants, notwithstanding he has, by the covenants of the lease, guarded against such contingency.'' ''Everyone has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent. In the familiar phrase of Lord Denman, 'You have the right to the benefit you anticipate from the character, credit and substance of the party with whom you contract.' '' (*Arkansas Valley Smelting Co.* v. *Belden Mining Co.*, 127 U. S. 379, 387 [32 L. Ed. 246, 248, 8 Sup. Ct. Rep. 1308, 1309, see, also, Rose's U. S. Notes].)

Owners of property are justly solicitous as to the character of its occupants and restrictions upon the right of a lessee to substitute another tenant without the lessor's consent are reasonable covenants which ought to be rationally construed. ''A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created.'' (Civ. Code, sec. 1442.) This does not mean that courts must resort to scholastic subtleties to save tenants from the consequences of their deliberate breach of their covenants. ''It has been said . . . that covenants against assignment or underletting are not favorably regarded by the courts and are liberally construed in favor of the lessees. But this means only that the scope of the term 'assignment' will not be enlarged by the courts, and that the covenant will not be considered as violated by any technical transfer that is not fairly and substantially an assignment.'' (*White* v. *Huber Drug Co.*, 190 Mich. 212 [157 N. W. 60].) ''This does not mean that the courts may make for the parties

a different contract from what they have agreed upon or resort to a strained and unnatural construction to defeat or nullify their clearly expressed purpose or intention." (*Troughton* v. *Eakle,* 58 Cal. App. 161 [208 Pac. 161, 165].)

Two of the lessees acquired the interests of the others and then, by separate assignments, conveyed the entire leasehold to persons who were strangers to the original lease. After Joe D. Cotta and Frank Deniz had acquired the entire interest in the lease, they continued to be bound by the covenant not to assign as fully as the four lessees were in the beginning. The covenant not to assign was joint and several. "Where all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several." (Civ. Code, sec. 1659.) "In the absence of evidence showing a contrary intention, the presumption stated in said section 1659 must control." (*Gummer* v. *Mairs,* 140 Cal. 535, 537 [74 Pac. 26, 27]; *Los Angeles County* v. *Luscher,* 58 Cal. App. 632 [209 Pac. 899].) When all the lessees, in violation of their joint and several promise, had thrust upon the lessor new tenants without his consent, it is not perceived on what principle of justice he can be compelled to accept them as tenants. The covenant against assignment was deliberately broken in the most literal and substantial manner. The assignees, of course, were chargeable with notice of the stipulation against assignment. (Tiffany on Landlord and Tenant, sec. 152.)

The judgment is reversed.

Jones, J., *pro tem.,* and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 27, 1923.