[Civ. No. 5050. First Appellate District, Division One.—April 24, 1926.]

## DORA ADELSTEIN, Appellant, v. ISAAC GREENBERG et al., Respondents.

[1] PARTNERSHIP—PARTIAL DISSOLUTION—RESERVATION OF LEASEHOLD INTEREST.—On partial dissolution of a partnership, the partners have a legal right to reserve to the copartnership a leasehold interest in a store building as being a species of property separable from the merchandise, fixtures, and other assets belonging to the copartnership and assigned to one of the copartners by the dissolution agreement.

[2] TRIAL—ARGUMENT ON DEMURRER—ADMISSIONS BY COUNSEL—PARTIES NOT BOUND.—A statement of counsel made during the course of an argument on demurrer is not binding, as it is not made during the trial of the action on the merits as an admission or stipulation of fact.

[3] APPEAL—FINDINGS—EVIDENCE.—A finding of the trial court supported by evidence cannot be disturbed on appeal.

[4] LEASES—JOINT LESSEES—COVENANT AGAINST ASSIGNMENT—CONSTRUCTION.—Where a leasehold interest is owned jointly, it is not a violation of a covenant against assignment for one colessee to acquire the interest of the other.

[5] ID.—CONDITION INVOLVING FORFEITURE—CONSTRUCTION.—A condition in a lease involving a forfeiture must be strictly interpreted against the party for whose benefit it is created.

[6] ID.—ASSIGNMENT BY ONE COLESSEE TO THE OTHER—PARTNERSHIP—FORFEITURE.—An assignment of a lease from one colessee to another on partial dissolution of a copartnership without the lessor's consent does not result in a forfeiture, both lessees continuing to be jointly and severally liable therefor.

[7] ID. — COVENANT AGAINST ASSIGNMENT — CONSTRUCTION.—A covenant in a lease against assignment containing the additional words, "nor any interest therein," means that neither the entire leasehold interest nor any less interest included therein should be assigned by the joint act of the lessees, and is not such as prohibits the assignment by one colessee to the other.

---

(1) 30 Cyc., p. 664, n. 79.    (2) 6 C. J., p. 649, n. 96.    (3) 4 C. J., p. 876, n. 78, p. 877, n. 80.    (4) 35 C. J., p. 980, n. 25, 26.    (5) 35 C. J., p. 978, n. 89, p. 1063, n. 45, 46, 47, p. 1181, n. 2.    (6) 35 C. J., p. 1066, n. 82.    (7) 35 C. J., p. 989, n. 56.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John J. Van Nostrand, Judge. Affirmed.

The facts are stated in the opinion of the court.

Harry K. Wolff for Appellant.

Sylvain J. Lazarus, Eugene H. O'Donnell and Gillogley, Crofton & Payne for Respondents.

KNIGHT, J.—This is plaintiff's appeal from a judgment in defendants' favor in an action in unlawful detainer.

For more than three years prior to the month of April, 1923, respondents Isaac Greenberg and Solomon Lipschitz,

---

3. See 2 Cal. Jur. 919; 2 R. C. L. 202.

4. Assigning to cotenant as breach of provision against assignment, see note in 17 A. L. R. 183. See, also, 15 Cal. Jur. 763.

as copartners, were engaged in the millinery business, operating three stores in San Francisco and two in Oakland. One of their San Francisco stores was located on Fillmore Street in premises owned by appellant. On April 26, 1923, appellant entered into a written lease with respondents for the continued use of said premises for a term of six years and nine months, commencing on May 1, 1923, the total rental being $26,775, payable in monthly installments ranging from $275 to $375 during the period of the lease. The terms of the lease recited that respondents had paid appellant the sum of $1,125 "as a bonus for obtaining" the lease, and it was agreed that in consideration of the full performance by respondents of the terms, covenants, and conditions of said lease, appellant would pay to respondents at the expiration of said lease the sum of $1,125; otherwise they were to receive nothing.

The copartnership continued to conduct the business in the premises leased from appellant until December 31, 1923, at which time a partial dissolution of copartnership was effected, the written agreement between the partners in this respect providing "that said copartnership shall be dissolved except as to the extent of the reservations hereinafter excepted and as of the date January 1, 1924." Under this agreement four of the places of business belonging to the copartnership were divided, two being assigned and transferred to each partner together with the merchandise and fixtures belonging thereto. The Fillmore Street establishment was set apart to Lipschitz. Said agreement further provided that each partner was vested with sole ownership in the property thus assigned and transferred to him, that the rental of the respective stores should thereafter be paid by the parties occupying the same and that "each of said stores may, subsequent to the date of said dissolution, operate under the trade name which same now bears and said several trade names shall be considered a part of said several businesses." The leases to three of the stores were expressly assigned by the terms of the agreement to the parties to whom those particular stores were transferred, but no mention whatever was made therein of the lease to the Fillmore Street premises, more than to provide that Greenberg's interest in the deposit for the security of the performance of the terms of that lease was assigned

to Lipschitz. It was agreed that the fifth store, located in Oakland, should continue to be the property of and conducted by the copartnership until the lease of those premises expired on September 30, 1924, and that thereafter the business should be "closed out and the said partial partnership as to said business terminated."

On December 19, 1923, about two weeks previous to the execution of the so-called agreement of partial dissolution, appellant mailed to respondents a letter stating that she had been informed by Mr. Lipschitz that respondents were contemplating a change in the firm, that one partner was about to dispose of his interest in the business to the other, and advising respondents "to read the third paragraph on page 10 of your lease." The letter concluded: "This is to notify you that no change can be made without my written consent first had and obtained thereto." On January 1, 1924, pursuant to said agreement, Lipschitz assumed ownership of the Fillmore Street store and paid the January rental in advance. On January 9, 1924, appellant served on respondents a notice of termination of the lease and demanded the surrender of the premises upon the ground that respondents had violated the following covenant in said lease: "The lessees further covenant and agree that neither this lease nor any interest therein whether legal or equitable, shall be assigned, alienated, pledged or hypothecated voluntarily or by operation of law, nor shall said demised premises be sub-let in whole or in part without the written consent of the lessor having previously thereto been obtained." Respondents refused to vacate said premises and on January 14, 1924, appellant commenced this action.

The trial court found, in effect, that no transfer or assignment of said lease had ever been made by respondents, or either of them, and accordingly rendered judgment in their favor. The main contention of appellant is that this finding is not supported by the evidence, claiming in this regard that the terms of said agreement, as well as the circumstances surrounding the taking over and operation of the Fillmore Street place of business by Lipschitz, established an assignment of the lease; and basing her next point on such assumed assignment, appellant urges as a proposition of law that the assignment of the lease from one partner to the other without her consent as lessor operated as

a forfeiture of the lease and to the money paid as security for the performance of its conditions and covenants.

[1]  So far as the record discloses there was no express assignment of said lease either by the terms of said agreement or otherwise, and we believe that the transactions involving the transfer of the Fillmore Street place of business to Lipschitz did not carry with it such assignment. After having received appellant's letter of December 19, 1923, respondents evidently concluded that in the settlement of their copartnership affairs they would reserve as copartners ownership of the lease to the Fillmore Street premises, and their agreement was apparently drafted and signed with that end in view. It will be noted from a reading of the entire instrument that the intention of the parties was not to bring about an immediate and complete dissolution of the copartnership at that time, but merely to divide the assets which were specifically enumerated in the agreement, and that as to those remaining, some of which were expressly mentioned in the agreement, the copartnership relation was to continue. Among the properties thus reserved to the copartnership were the assets belonging to the Oakland store and the leasehold interest in the Fillmore Street premises. As between themselves, respondents doubtless had the legal right to make this kind of an adjustment of their copartnership property, for the reason that the leasehold interest in the Fillmore Street premises was a species of property separable from the merchandise, fixtures, and other assets belonging to the store and consequently could be legally reserved by the copartnership from the transfer and assignment of the assets belonging to the store. (*Johnson* v. *Levy*, 3 Cal. App. 591 [86 Pac. 810].) [2] The statement of counsel for respondents made before the trial court during the course of the argument on demurrer indicating that there had been an assignment of the lease, to which appellant calls attention, is unimportant, being merely the statement of a legal conclusion, and even if it could be regarded as a matter of fact, was not binding on respondents because it was not made during the trial of the action on the merits as an admission or stipulation of fact.

If, as the trial court found, and as we believe to be the case, there was no assignment of the leasehold interest to Lipschitz, appellant is wholly without ground for com-

plaint because the tenancy created by the lease continues unbroken, and the duties and obligations of respondents and the rights of appellant thereunder, as original parties to the lease, remain unchanged and unimpaired. The lease provided, it is true, that the lessees should not sublet the premises and that the same should be used "for the conduct of millinery and millinery supply business only and for no other business whatever," but neither of those provisions has been violated. It is not claimed that the premises have been sublet, and the quoted provision of the lease does not require that the business mentioned shall be owned or conducted jointly by the lessees. · [3] For the foregoing reasons, we conclude that the finding of the trial court to the effect that an assignment of said lease had not been established is supported by the evidence, and therefore said finding cannot be disturbed on appeal.

[4] It has been held generally in this state and in other jurisdictions that where the leasehold interest is owned jointly, as by copartners, it is not a violation of the covenant against assignment for one colessee to acquire the interest of the other. (*Randol* v. *Scott,* 110 Cal. 590 [42 Pac. 976]; *Spangler* v. *Spangler,* 11 Cal. App. 321 [104 Pac. 995]; *Ruppe* v. *Utter,* 76 Cal. App. 19 [243 Pac. 715]; *Swartz* v. *Bixler,* 261 Pa. 282 [104 Atl. 501]; *Bristol* v. *Westcott,* L. R. 12 Ch. Div.· 461.) Where strangers are brought into the lease, a different situation is presented. (*De Angeles* v. *Cotta,* 62 Cal. App. 691 [217 Pac. 821].) [5] In *Randol* v. *Scott, supra,* the rule is stated as follows: "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created, and to prevent the restraint from going beyond the expressed stipulation; a covenant by the lessee not to assign the lease must be presumed to mean that the lease should not be assigned by the joint act of the lessees." In the case of *Spangler* v. *Spangler, supra,* one colessee assigned to the other, and the landlord claimed a forfeiture. The court said: "The covenant is that the lessees shall not assign, and only one of them has done so. It does not provide that neither of the lessees shall assign, nor that one may not assign to the other; and construing this covenant strictly against the lessor, as the law requires us to do, it should be presumed to mean that the lease should not be assigned

.

by both. As the assignment was by only one of the lessees, it was no breach of the covenant, and, therefore, there was not forfeiture." In *Bristol* v. *Westcott, supra,* the lease to a copartnership contained a covenant against assignment without lessor's consent, and it was held that there was no breach where one of the lessees, on dissolution of the firm, agreed to assign to the other his interest in the lease if the consent of the lessor could be obtained, but had already signed further memorandum reciting that he had already given sole possession of the premises to the other. The covenant in that lease was construed as inhibiting only the parting with possession to any person other than one of those two to whom possession was originally given.

[6] It would therefore appear in the instant case that even though there were an express or implied assignment from one colessee to the other without the lessor's consent, a forfeiture would not result. Under such circumstances, the assignment being made without the consent of the lessor, the relations between the lessor and the lessees would remain unaffected by the transaction between the lessees, both lessees continuing to be jointly and severally liable to the lessor for any breach occurring. (*Wood* v. *Longyear,* 197 Cal. 723 [242 Pac. 932].) [7] Appellant does not question the correctness of the rule adhered to in the cases cited, but endeavors to distinguish the instant one from them upon the ground that the covenant here against assignment contained the additional words "nor any interest therein." As already pointed out in the cases of *Randol* v. *Scott, supra,* and *Spangler* v. *Spangler, supra,* the covenant against assignment must be presumed to mean that the lease shall not be assigned "by the act of the joining lessees," and it would seem to follow therefrom in the case at bar that the additional words mentioned mean simply that neither the entire leasehold interest nor any less interest included therein shall be assigned "by the joint act of the lessees," the result of which would be, for instance, to bring in with respondents one or more strangers to the lease, as was done in the case of *De Angeles* v. *Cotta, supra.* If the intention had been to preclude an assignment from one colessee to the other, a clause to that effect could easily have been inserted in the covenant in question. "A forfeiture can be enforced only when there is 'such a breach

shown as it was *the clear and manifest intention* of the parties to provide for.' (Taylor on Landlord and Tenant, 8th ed., sec. 489, and cases cited.) . . . Of course it is unnecessary to cite authorities to the points that covenants in restraint of alienation are barely tolerated, and that contracts looking to penalties and forfeitures must be strictly construed. . . . Our own code provides that 'a condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created.' (Civ. Code, sec. 1442.) As to the power of re-entry for the forfeiture of a lease it was said by Justice Miller: 'It has always been considered that it was necessary to restrain it to the *most technical limits* of the terms and conditions upon which the right is to be exercised.' ('*Elevator Case,*' 17 Fed. 201.) 'Covenants of this description are construed by courts of law with the utmost jealousy to prevent the restraint from going beyond the express stipulation.' (Taylor on Landlord and Tenant, sec. 403.)'' (*Randol* v. *Scott, supra.*) The covenant in the lease here, as already shown, contained no clause against assignment by one colessee to the other. That being so, it is not within the power of the courts to revise the lease so as to insert such a clause. However, if, as we believe, the evidence supports the finding of the trial court to the effect that there has been no express or implied assignment of said leasehold interest, the question of the effect of such an assignment becomes immaterial.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.